[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-16095

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 17, 2005
THOMAS K. KAHN
CLERK

D.C. Docket No. 04-01938-CV-T-26-MSS

SALVADOR DIAZ-VERSON, JR.,
DVA ARENA, LLC,
a Florida limited liability company,
DVA SPORTS, LLC,

                                        Plaintiffs-Appellants,

versus

BANK OF AMERICA, N.A.,
A subsidiary of Bank of America Corporation, a foreign for profit corporation,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(November 17, 2005)**

Before TJOFLAT, PRYOR and ALARCON*, Circuit Judges.

_____

*Honorable Arthur L. Alarcon, United States Circuit Judge for the Ninth Circuit, sitting
by designation.

PER CURIAM:

On May 14, 2004, Bank of America (the "Bank") and Salvador Diaz-Verson, Jr., entered into a written loan commitment (the "Commitment") whereby the Bank agreed to loan Diaz-Verson a sum of money which Diaz-Verson would use to purchase a parcel of real estate.[1] The Commitment provided that it would become "null and void if . . . the Loan [was] not closed prior to June 1, 2004." The loan did not close prior to that date; the Bank therefore treated the Commitment as a nullity.

Diaz-Verson thereafter brought this action against the Bank, filing a four-count complaint for consequential and punitive damages. Two of the counts are before us in this appeal, Counts I and II. Count I alleges that the parties amended the Commitment by oral agreement to extend the closing date to June 25, 2004, that Diaz-Verson was prepared to close the loan that day and that, in refusing to close, the Bank infringed his rights under the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691. Count II repeats the allegations that the parties amended the Commitment to extend the closing date to June 25 and that the Bank

---

[1] The Commitment was made with DVA Sports, LLC. Because Diaz-Verson owns a controlling interest in DVA Sports and guaranteed the loan, we treat the Commitment has having been issued to Diaz-Verson. According to Diaz-Verson's complaint in this case, Diaz-Verson planned on placing an arena to be used primarily for a minor-league hockey team.

refused to close on that day, and alleges that the Bank therefore breached the Commitment as amended.

The Bank moved to dismiss Counts I and II for failure to state a claim for relief, see Fed. R. Civ. P. 12(b)(6), and the district court granted its motion. The court's dispositive order does not explain why Count I failed to state a claim.[2] The order stated that Count II failed to state a claim because the alleged oral agreement to extend the closing date was unenforceable under Florida's Banking Statute of Frauds, FLA. STAT. § 687.0304. Diaz-Verson now appeals, contending that Counts I and II state claims for relief.

We affirm the district court's judgment on Count I because Diaz-Verson's claim is frivolous. The ECOA prohibited the Bank from discriminating against Diaz-Verson "on the basis of race, color, religion, national origin, sex, or marital status or age." 15 U.S.C. § 1691(a)(1). The closest the complaint comes to alleging discrimination on the basis of any of these protected categories is the allegation, in Count I, that the "Plaintiff Diaz-Verson, Jr., was born in Cuba and is now a naturalized American citizen." This is simply not enough to make out a case of discrimination on account of "national origin." We turn then to Count II.

---

[2]The Bank's memorandum in support of the motion to dismiss argued that Count I failed to allege a prima facie case under the ECOA. We assume that the district court accepted the Bank's argument.

3

Florida's Banking Statute of Frauds provides that "[a] debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." FLA. STAT. § 687.0304(2). The statute defines "credit agreement" as "an agreement to lend or forbear repayment of money, goods, or things in action, to otherwise extend credit, or to make any other financial accommodation." FLA. STAT. § 687.0304(1)(a). It goes on to state that an "agreement by a creditor to take certain actions, such as entering into a new credit agreement, forbearing from exercising remedies under prior credit agreements, or extending installments due under prior credit agreements," must be in writing and otherwise satisfy the requirements under subsection (2) of the statute. FLA. STAT. § 687.0304(3)(a).

Count II alleges, in paragraph 26, that "[t]his is an action for damages for breach of a loan commitment. . . ." In paragraph 28, Count II alleges that "Bank of America breached the Commitment. . . ." The paragraphs "Common to All Counts," which precede Count I (and therefore Count II), allege in paragraph 8, that the "Commitment is attached hereto as Exhibit 'A.'" Exhibit A, as indicated above, states that the Commitment shall become "null and void if . . . the Loan is not closed prior to June 1, 2004." The loan did not close prior to that date; hence,

4

in paragraphs 9 and 10, the complaint alleges that the June 1 closing date "was extended by oral agreement" to June 25, and that the Bank "agreed to that closing date."[3] The sum of these allegations is that the Bank breached an oral agreement.

The Florida Statute of Frauds plainly forecloses a suit based on an oral credit agreement, such as the one at hand. In his brief, Diaz-Verson argues two sides of the coin: (1) the Bank's oral agreement to extend the closing date constituted a <u>waiver</u> by the Bank of its right to treat the Commitment as "null and void" if the loan did not close on or before June 1; (2) the Bank's oral agreement to extend the closing date operated to estop the bank from relying on the June 1 closing deadline.

We assume for sake of argument that whereas the statute bars enforcement of an oral agreement, such as the one the parties allegedly made, it does not bar the application of the doctrines of waiver and estoppel. Those doctrines are based on the proposition that the party against whom the doctrines are asserted engaged in conduct that delayed the other party from performing in accordance with the written agreement. <u>See</u> <u>Young v. Pottinger</u>, 340 So. 2d 518, 520-21 (Fla. 2d DCA 1976) (citing 2 A. Corbin, Corbin on Contracts, § 310 (1950)). Put in the context of this case, the allegation would be that the Bank engaged in conduct that

---

[3]The complaint does not allege when the oral agreement to extend the date was made.

prevented Diaz-Verson from closing the loan on or before June 1. Diaz-Verson's problem in pursuing the waiver/estoppel argument is that the complaint does not allege such conduct on the Bank's part. All that it states is that the Bank—at some undisclosed date—extended the closing date to June 25. There is no allegation, for example, that Diaz-Verson was prepared to close on or before June 1; to the contrary, the inference we draw from the complaint's allegations is that Diaz-Verson could not have closed on time. In sum, assuming that the doctrines of waiver and estoppel could provide Diaz-Verson a basis for proceeding against the Bank, they provide him no comfort because nothing in the complaint supports their application.

The judgement of the district court is, accordingly,

**AFFIRMED.**